IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

HYTERA COMMUNICATIONS
CORP. LTD.,               )
                         )      CASE NO.: 1:17 CV 1794
        Plaintiff.       )
                         )      JUDGE DONALD C. NUGENT
                         )
v.                       )
                         )
MOTOROLA SOLUTIONS, INC., )
                         )      <u>MEMORANDUM OPINION</u>
        Defendant.       )      <u>AND ORDER</u>
                         )

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (ECF #131), and Defendant's Motion For Summary Judgment of Non-Infringement and No Damages. (ECF #132, 133).   Each party filed a response in opposition to the opposing party's motion, and a reply in further support of their own.  (ECF #135, 136, 141, 143).  The Court heard oral arguments on the motions on September 21, 2020.  (ECF #146).  After careful consideration of the briefs and a thorough review of all relevant evidence and authority, the Court finds no infringement.  Accordingly, Plaintiff's Motion for Partial Summary Judgment is DENIED, and Defendant's Motion for Summary Judgement of Non-Infringement is GRANTED. .

## FACTS AND PROCEDURAL HISTORY[1]

Hytera Communications Corp., Ltd. ("Hytera") is the owner of asserted U.S. Patent No. 9,183,846 ("the '846 Patent").   The '846 Patent protects a method for enhancing the audio output quality of speech for communication devices in noisy environments, by allowing for the automatic adjustment of both volume and audio frequency response in response to ambient noise. According to Hytera, this method is unique in that it requires two distinct gains: a volume adjustment, which is triggered based on the level of ambient noise; and, a frequency adjustment wherein a treble or bass boost, of a gain greater than one, is triggered only when the ambient noise meets a pre-set threshhold.

The '846 Patent describes the method as follows:

A method for adaptively adjusting an acoustic effect, wherein the method is applied to an apparatus having an audio output device, and the method comprises:

obtaining an energy value of a current ambient noise;

receiving a first triggering instruction, and adjusting a current output volume based on the energy value of the current ambient noise; and

performing a treble boost processing if it is determined that the energy value of the current ambient noise is greater than a first threshold, or performing a bass boost processing if it is determined that the energy value of the current ambient noise is smaller than a second threshold

---

[1]

The facts and procedural history have been taken from the undisputed statements set forth in the parties' briefs, and official court records.  In accordance with the applicable standards on a motion for summary judgment, genuine questions of material fact have been resolved in favor of the non-moving party.

Hytera claims that, beginning in 2014, Motorola Solutions, Inc. ("Motorola") altered its Intelligent Audio technology to include a "treble boost," and that this new iteration of Intelligent Audio directly or indirectly infringes the '846 Patent.  Motorola contends that Intelligent Audio products, do not carry out all of the claimed steps of the '846 Patent, and, therefore, are not infringing.  Further, Motorola claims that the allegedly infringing technology that is a part of Intelligent Audio existed and was in use prior to the '846 Patent.  Thus, according to Motorola, if the Intelligent Audio technology does, in fact, carry out all of the claimed steps of the '846 Patent, its prior existence would invalidate the Patent.

There is no dispute that the accused Motorola products constitute apparatuses with an audio output device, which use a method for adaptively adjusting an acoustic effect.  (ECF #134, Ex. 2 ¶95; Ex. 5 ¶79).  The parties also agree that when it is enabled, Motorola's Intelligent Audio samples ambient noise and creates a weighted average using 90% past ambient noise, and 10% current ambient noise, which it stores as a variable called "noiseLevel." (ECF #134, Ex. 2 ¶ 103; Ex. 4¶ 371; Ex. 5 ¶¶ 45, 57; Ex. 13 at 33:22-34:21; Ex. 18 ¶ 106).  If this "noiseLevel" reaches a certain triggering value, the device adjusts a current output volume by applying a increase to the output signal at the speaker.  Hytera calls this a "hardware gain."  Both parties agree that this gain is a change in volume that applies equally to all frequencies.  (ECF #134, Ex. 2 ¶¶ 114, 117, 120; Ex. 4 ¶¶ 373, 375).  It does not result in a relative increase to the either treble or bass frequencies.

The parties also agree that the accused technology contains software that checks whether the "noiseLevel" is above a set threshold.  (ECF #134, Ex. 2 ¶ 123; Ex. 4 ¶¶ 387-389).  If the "noiseLevel" is above this threshold, and there is speech detected in the output signal, the

Adaptive Noise Masking ("ANM") software applies a high-pass filter to the output signal that lowers bass frequencies but does not change the treble frequencies in the output. (ECF #134, Ex. 2 ¶ 138; Ex. 4 ¶ 397).   Finally, the parties agree that the Intelligent Audio technology in the Motorola's products does not have a second threshold that triggers bass boost processing, and the products are not alleged to perform bass boost processing no matter the energy level of ambient noise. (ECF #136, pg. 4).

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for

summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred

with the Ninth Circuit's position that "'only admissible evidence may be considered by the trial

court in ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d 222, 225-26

(6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made
> on the basis of personal knowledge, set forth admissible evidence, and show that
> the affiant is competent to testify.  Rule 56(e) further requires the party to attach
> sworn or certified copies to all documents referred to in the affidavit.
> Furthermore, hearsay evidence cannot be considered on a motion for summary
> judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may

be considered by the district court unless the opposing party affirmatively raises the issue of the

defect.

> If a party fails to object before the district court to the affidavits or evidentiary
> materials submitted by the other party in support of its position on summary
> judgment, any objections to the district court's consideration of such materials are
> deemed to have been waived, and [the Sixth Circuit] will review such objections
> only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

   As a general matter, the district judge considering a motion for summary judgment is to

examine "[o]nly disputes over facts that might affect the outcome of the suit under governing

law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh

material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to

determine whether there is a genuine factual issue for trial; this does not exist unless "there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Summary judgment is as appropriate in a patent case as in any other type of case. *Desper Prods., Inc. V. QSound Labs, Inc.*, 157 F.3d 1324, 1332 (Fed. Cir. 1998).  The defense of non-infringement may appropriately be decided on summary judgment if no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused product either literally or under the doctrine of equivalents. *U.S. Philips Corp. v. Iwasaki Elec. Co. Ltd.*, 505 F.3d 1371, 1374 (Fed. Cir. 2007); *see also Lucent Technologies, Inc. v. Gateway, Inc.,* 525 F.3d 1200 (Fed. Cir. 2008).  Both parties agree that there is undisputed evidence in this case generally establishing how the accused product works, and there are no genuine issues of material fact that would prevent a summary judgment ruling on the issue of infringement.

## ANALYSIS

### I. Infringement

A patent is infringed when a person "without authority makes, uses, offers to sell or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a).    Hytera's claim is a method claim.  A method claim is infringed when an accused product carries out every step of the patented method. *See, e.g., Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998).   Hytera, as the accuser, bears the burden of proving, by a preponderance of the evidence, that Motorola's accused products perform each step of the claimed method.

Motorola contends that its Intelligent Audio products do not perform each step of the claimed method because they do not "obtain an energy value of a current ambient noise," or use

-7-

this as a trigger for volume adjustment; do not perform "treble boost processing;" do not perform "bass boost processing;" and, do not have two pre-set thresholds to trigger boost processing.

    A. <u>Energy Value</u>

    The first step of the patented method requires that the product "obtain[] an energy value of a current ambient noise." The term "energy value" has been construed to be a single energy value that represents the current ambient noise. Motorola contends that it does not obtain an energy value of current ambient noise because the "noiseLevel" value Hytera points to as the allegedly infringing value is actually a weighted average of 90% past ambient noise and only 10% current ambient noise. Motorola does not contest that it samples current ambient noise and uses that, along with past levels to create a weighted average it calls "noiseLevel." Even accepting Motorola's evidence as true, it seems clear that although the "noiseLevel" does not represent the value of the current ambient noise, the products must obtain the energy value of the current ambient noise in order to create the average value represented by the "noiseLevel." It is possible, therefore, that Hytera could prove that Motorola's products do obtain an energy value for current ambient noise, through the sampling and valuing of current ambient noise.

    Even if Motorola's products do satisfy the Step S101 of the patented method, however, Step S102 further requires that there be an adjustment of a current output volume based on the energy value of the current ambient noise. The parties agree that the "noiseLevel" value is what triggers an adjustment of the output volume in the accused products. They also agree that this "noiseLevel" is a weighted average consisting of 90% of past ambient noise, and 10% current ambient noise. (ECF #134, Ex. 5 ¶45, 57; Ex. 18 ¶106; Ex. 13 at 33:22-34:21). Hytera argues that even though it is an average, the "noiseLevel" is based on the energy value of the current

-8-

ambient noise.  Motorola counters that because "noiseLevel" is a weighted average based mostly on the energy value of past ambient noise, any adjustment that is triggered by the "noiseLevel" is not an adjustment based on the energy value of the current ambient noise.

Hytera complains that Motorola is attempting to re-define the phrase "current ambient noise," pointing out that Motorola never sought to construe this term during the claim construction phase of this litigation.  In actuality, Motorola's argument does not require any construction of this phrase because it comports with the plain and ordinary meaning of the language used.  Rather, it is Hytera's argument that clashes with the Court's prior claim construction and with the usual meaning of the word "current."

Hytera's argument that the value of the "current ambient noise" can be derived by averaging or weighing prior values along with the current value were considered and dismissed during claim construction.  As discussed in the Court's claim construction order, and as is clear in reviewing the Patent as a whole, Hytera's citation to an averaging equation in Example 8 of the Patent does not support its claim that an average based primarily on past values can be the energy value of the current ambient noise, which is referenced in Claim One. The Patent claims differentiate between the energy value of current ambient noise, and the energy value of reference noise. The formula argued by Hytera, and shown in Example 8 addresses the second claim and describes the difference between the current ambient noise value and the reference value used when voice is removed from the current sound sample before determining current ambient noise. 134, Ex. 2 ¶ 106.  The later is an "average noise level" not a "current" ambient noise.  Claim One does not include any method for the determination of voice frequencies, and, as such, the weighting of previous voice values would have no application to the method described in Claim

-9-

One.  Further, the energy value of the "current ambient noise" has been construed to be a singular value and simply cannot be rationally equivalent to the energy value of "average ambient noise," let alone an average ambient noise which is weighted 90% in favor of past noise values.

Based on the plain language used in the Patent, and for all of the other reasons set forth in this Court's Memorandum Opinion and Order on claim construction, and above, the energy value of current ambient noise must be value that represents only the currently existing ambient noise and not a conglomeration or average of values based on past and present noise levels.  (ECF #48).  As Hytera has offered no evidence to suggest that Motorola's accused products adjust current output volume based on a singular, non-averaged energy value of the current ambient noise, there is no evidence to support a finding that the accused products practice Step S102 of the patented method, and there can be no infringement.

      B. Frequency Boost Processing

          1. Treble Boost Processing

Hytera has, at various points, argued three different infringement theories in support of its claim that Motorola's products perform "treble boost processing."  One of those theories, based on energy normalization, has no evidentiary support from Hytera's expert, and, therefore, will not be considered by the Court.[2]  *See, e.g., Pernix Ir. Pain DAC v. Alvogen Malta Operations Ltd.*, NO. Cv 16-139-WCB, 2018 WL 2225113, at *4-7 (D. Del. May 15, 2018).  The remaining two

---

[2]

  Dr. Akl, Hytera's expert contended for the first time in his original infringement report that ANM performs "treble boost processing" using a function called "energy normalization."  (ECF # 121, at 4-6).  Motorola filed a motion to strike this theory, and Hytera voluntarily withdrew it, providing an Amended report from Dr. Akl removing all references to this theory.  (ECF #124, ECF #134, Ex. 2).

theories are that AMN combines with Automatic Volume Control ("AVC") software gain to create a treble boost with a gain greater than one; and, that ANM uses linear scaling to create a treble boost with a gain greater than one.

Hytera argues that Motorola's products infringe the '846 Patent because when a certain level of ambient noise is reached, the accused products apply a high-pass filter that reduces bass frequencies and lets treble frequencies pass through. In addition, the Motorola products increase the volume of the audio in digital form before converting it into an analog signal, something Hytera calls "software gain." However, neither of these processes, alone or combined, creates a treble boost, as defined during claim construction.

The Intelligent Audio feature is part of the software contained in the accused products. It includes a functionality called AVC, which automatically adjusts radio volume based on the "noiseLevel" as background noise increases. It also includes a functionality called ANM, which automatically adjusts the frequencies of an output audio signal when the background noise is sufficiently high. Hytera also identifies a functionality it calls "hardware gain" that controls a hardware amplifier circuit in depending on the level of ambient noise, causing it to increase the audio signal played through the loudspeaker. This hardware gain is, undisputedly, applied equally to all frequencies. (ECF #133-4, Ex. 3, Akl. 5/7/20 Depo. 70:7-9).

The '846 Patent describes a method in which the product performs a treble boost if it is determined that the energy value of the current ambient noise is greater than a set threshold. During claim construction, the Court construed "treble boost" to mean "an amplification of the treble frequencies using a gain greater than one." Thus, in order to perform this step of the patented method, the product must perform an amplification of the treble frequencies using a gain

greater than one, if it is determined that the energy value of the current ambient noise exceeds a set threshold.  An amplification that does not boost the treble frequency by a gain greater than one does not perform this step of the Patent; nor does an amplification that occurs without regard to the ambient noise threshold level.

The parties agree that the software gain Hytera points to is always applied when the accused products are in use, without regard to whether ambient noise meets or exceeds any particular threshold.  (ECF #133-4, Ex. 3, Akl 5/7/20 Depo. At 119:2-20).  Further, the software gain does not perform treble boost processing, rather it increases all frequencies simultaneously.  (ECF #133-4, Ex. 3, Akl 5/7/20 Depo. At 69:14-21, 70:3-17).  When all frequencies are increased simultaneously, it is a volume adjustment and not "treble boost processing."  Treble boost processing speaks of boosting a specific frequency.  As volume adjustments are addressed separately in the Patent, and specific references to treble and bass boost processing within the Patent are subject to two separate threshold triggers, it would not make sense to treat a volume adjustment that increases all frequencies as a "treble boost" under the Patent language.    *Cf.* *CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).  Even Hytera's own engineers have recognized that volume adjustment and treble boost are not the same thing in the context of the '846 Patent.  (See, e.g., ECF #133-13, 133-15, 133-16).  Therefore, the accused software does not create a treble boost if it is determined that the energy value of the current ambient noise exceeds a set threshold, it simply boosts all frequencies, all the time.  It does not, therefore, practice the Patent's described method.

Possibly recognizing that the software gain, which increases all frequencies, does not qualify as "treble boost processing" under the Patent, Hytera claims that this volume increase is

-12-

transformed into a treble boost when the "high pass filter" in the accused products reduces bass frequencies, leaving the treble frequencies untouched, thereby resulting in an overall relative increase in the treble frequencies compared to the bass. This argument fails, however, because even if the high pass filter does create a relative increase in the treble, it does not perform a "treble boost" as that term was defined during claim construction. This Court made clear during the claim construction process that a relative increase in treble frequencies, achieved by reducing bass frequencies does not equate to a "treble boost" under the '846 Patent, and that the "treble boost" must create a gain greater than one. Hytera has acknowledged that "the treble enhancement functionality related to the filtering of bass... doesn't give you a gain greater than one." (ECF #133-10, Ex. 9 Hytera's 11/20/18 Final Inf. Cont., Ex. A at 20-22; see also, ECF #133-7, Ex. 6 Alk. Inf. Rpt. ¶ 138; ECF #133-4, Ex. 3, Akl. 5/7/20 Depo. 112:9-10, 108:11-109:13; ECF #133-5, Ex. 4, Akl 5/8/20 Depo. At 263:22-264:3). Because there is no evidence that the accused products perform treble boost processing, as defined during claim construction, or that any such boost is performed when the ambient noise exceeds a set threshold, Hytera cannot prove that the accused products practice Step 103 of the patented method.

### 2. Bass Boost Processing

There is no dispute that Motorola products do not perform bass boost processing if it is determined that the energy value of the current ambient noise is smaller than a second threshold. In fact, Hytera does not allege that Motorola's products are even capable of performing a bass boost. (ECF #136, pg. 4). There is also no dispute that the accused products have no second threshold that could trigger such a boost. Hytera's only argument for infringement on this step of the method is its contention that no second threshold, or capability for bass boost processing is

-13-

required by the patented method.

The patented method comprises "performing a treble boost processing if it is determined that the energy value of the current ambient noise is greater than a first threshold, or performing a bass boost processing if it is determined that the energy value of the current ambient noise is smaller than a second threshold." Hytera argues that the use of the word "or" means that the products must be capable of performing either a treble boost processing or a bass boost processing but not both. Motorola contends that because the Patent references both a first and second threshold, both thresholds, and both boost processing capabilities must exist in order to satisfy the method's requirements.

Hytera's argument that Motorola's interpretation requires re-writing the Patent to mean that both treble and bass processing must be performed is without merit, as is its claim that Motorola is contradicting the position it took during claim construction. Motorola has never argued that both treble and boost processing must be performed.  Rather, it has consistently noted that whether either frequency boost will ever be activated is dependent on the threshold level of ambient noise obtained in Step 101. The patented method does not require that either the treble and bass boost actually be performed, but does require that one or the other be performed *if* the corresponding threshold is met. Although the product must be capable of performing both, and must have triggering thresholds set for each type of boost, only one *or* the other will be performed, and only if the corresponding threshold is reached.  Hence, the use of the word "or" is accurate and clear even without construction because it comports with the dependent nature of the

-14-

products' response to the determined value of the ambient noise, and to those two thresholds.[3]
The fact that "or" in this context was meant to reflect the dependent nature of the performance of
treble or bass boost processing, rather than creating two independent alternatives is obvious from
a literal reading of the Patent's chosen language.   The language, and the order of the language
used to describe this step indicates that both a first and second threshold will be compared to the
determined value of the ambient noise, and that if either threshold is met the corresponding
frequency boost should be performed.   These dual thresholds are referenced throughout the
specification. This reading is also supported by the description of the embodiments disclosed in
the Patent, as well as the statements made during the Patent's prosecution.  (ECF #133-6, Ex. 5;
ECF #133-17, Ex.16).  Every disclosed embodiment of the Patent shows a device capable of
performing both treble and bass boost processing, depending on the energy value of the detected
ambient noise.   Finally, the file history of the Patent makes clear that the examiner understood
the Patent to require the use of two thresholds to determine which frequency would be boosted.
(ECF #133-6, Ex. 5).

     Hytera cites to Federal Circuit precedent that arguably holds the use of "or" in a method

---

[3]

  If the Patent could be read, as Hytera urges, to require that the product have only one of
two thresholds and that it be capable of triggering only one of the two possible boost
processing responses, it could potentially invalidate the Patent.  Motorola has submitted
evidence that could convince a jury that Hytera has surrendered any argument that would
eliminate the requirements for bass boost capabilities through prosecution disclaimer.
There is evidence that would allow a finding that eliminating any requirement for bass
boost processing capabilities would  contradict Hytera's arguments for overcoming the
prior art during its patent prosecution and during the Inter Parties Review process. *See*
*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001)("A
patent may not, like a nose of wax, be twisted one way to avoid anticipation and another to
find infringement.").   There is also evidence that could support Motorola's claim that its
products constituted prior art and/or were earlier conceived and reduced to practice.

claim does not require the performance of both alternatives.  *See, Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1330-31 (Fed. Cir. 2001).  Even if this is true, however, it does not invalidate Motorola's argument, or answer the question at hand.  As explained above, Motorola does not contend that both alternatives are required to be performed in order to practice the patented method.  Rather, the Patent requires that the product determine whether either of the two thresholds have been met, and, if, and only if, one or the other has been met, requires that it apply the corresponding frequency boost.

In short, although the Patent does not require that both treble and bass boost processing ever actually be performed, it does require that the product make a determination as to whether the energy value of the current ambient noise is greater than a first threshold, and whether that same energy value is smaller than a second threshold.  It also requires that the product perform the corresponding treble or bass boost *if* these thresholds are met.  As Hytera has provided no evidence or argument to suggest that Motorola's products have a second threshold that could trigger bass boost processing, or any ability to apply bass boost processing if such a threshold were met, the accused products do not fully practice step S103.  Because they do not practice every step of the patented method, they do not infringe the '846 Patent.

II.  Invalidity Defenses

Having determined that there is no infringement as a matter of law, there is no need to address Motorola's invalidity defenses.   In any case, Motorola's invalidity claims would not be amenable to summary judgment as there are multiple relevant factual issues that remain in dispute.

## CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment of Non-Infringement is hereby GRANTED.  (ECF #132).  Plaintiff's Motion for Partial Summary Judgment is DENIED.  (ECF #131).  Judgment is entered in favor of Defendant, Motorola, and this case is dismissed.  IT IS SO ORDERED.

Judge Donald C. Nugent
United States District Judge

Date:  November 18, 2020

-17-